JUDGE SULLIVAN



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

MANUEL ESGUERRA, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

GENWORTH FINANCIAL, INC., THOMAS J. MCINERNEY, and MARTIN P. KLEIN,

Defendants.

</td><td>

Case No. _____

RECEIVED
AUG 19 2014
U.S.D.C. S.D. N.Y.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

**14 CV    6639**

</td></tr>
</table>

CLASS ACTION COMPLAINT

Plaintiff Manuel Esguerra ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Genworth Financial, Inc. ("Genworth" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Genworth; and (c) review of other publicly available information concerning Genworth.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of Genworth securities between December 4, 2013 and July 29, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Genworth operates through three divisions: U.S. Life Insurance, which includes life insurance, long term care insurance ("LTC") and fixed annuities; Global Mortgage Insurance, containing U.S. Mortgage Insurance and International Mortgage Insurance segments; and the Corporate and Other division, which includes the International Protection and Runoff segments.  Products and services are offered through financial intermediaries, advisors, independent distributors and sales specialists.

3.      On July 29, 2014, after the market close, the Company issued a press release announcing that its LTC insurance division suffered from higher incurred losses due to the higher severity of new and existing claims.  The Company announced that it was conducting a comprehensive review of the adequacy of its claim reserves.

4.     On this news, shares of Genworth declined $2.28 per share, over 14%, to close on July 30, 2014 at $13.98 per share, on unusually heavy volume.

5.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's LTC insurance claims were increasing in number and size; (2) that the Company would have to increase its reserves to meet these claims; and (3) that, as a result of the foregoing, the Company's statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Manuel Esguerra, as set forth in the accompanying certification, incorporated by reference herein, purchased Genworth common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Genworth is a Delaware corporation with its principal executive offices located at 6620 West Broad Street, Richmond, Virginia 23230.

13.     Defendant Thomas J. McInerney ("McInerney") was, at all relevant times, Chief Executive Officer ("CEO") and a director of Genworth.

14.     Defendant Martin P. Klein ("Klein") was, at all relevant times, Chief Financial Officer ("CFO") of Genworth.

15.     Defendants McInerney and Klein are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Genworth's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to

them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Genworth operates through three divisions: U.S. Life Insurance, which includes life insurance, long term care insurance and fixed annuities; Global Mortgage Insurance, containing U.S. Mortgage Insurance and International Mortgage Insurance segments; and the Corporate and Other division, which includes the International Protection and Runoff segments. Products and services are offered through financial intermediaries, advisors, independent distributors and sales specialists.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on December 4, 2013.  On this day, the Company hosted a conference call with investors and analysts regarding the Company's long term care insurance division.  During the call, Defendant  McInerney, in relevant part, stated:

> […] *We have said repeatedly that we believe we have adequate long term care reserves with the margin for future deterioration and our presentation today provides support for these conclusions.*
>
> As I've told many of you before, when I joined Genworth in January. I would focus on understanding the long term care business, because of our results and generally poor LTC results for the industry. Indeed, I came to Genworth with a view that the long term care insurance business was a challenge business and we needed to determine if we should exit the business.

However now that we have completed the very intensive, broad, and deep review of a long term care insurance business and developed a three-part LTC strategy, we have determined that long term care insurance is a business that we believed can be managed successfully.

(Emphasis added).

18. On February 4, 2014, the Company issued a press release entitled, "Genworth Financial Announces Fourth Quarter 2013 Results." Therein, the Company, in relevant part, stated:

**Net Income Improves 24 Percent From Prior Year To $208 Million
Continued Progress With Long Term Care Premium Rate Actions
Strong Loss Performance In Global Mortgage Insurance Division**

Genworth Financial, Inc. (NYSE: GNW) today reported results for the fourth quarter of 2013. The company reported net income of $208 million, or $0.41 per diluted share, compared with net income of $168 million, or $0.34 per diluted share, in the fourth quarter of 2012. Net operating income for the fourth quarter of 2013 was $193 million, or $0.38 per diluted share, compared with net operating income of $161 million, or $0.33 per diluted share, in the fourth quarter of 2012. Prior year net income and net operating income included an after-tax favorable adjustment of $78 million associated with the reversal of the accrued liability for exit fees related to the government guarantee fund in Canada.

The company reported net income of $560 million, or $1.12 per diluted share, in 2013, compared with net income of $325 million, or $0.66 per diluted share, in 2012. The company reported net operating income of $616 million, or $1.24 per diluted share, in 2013, compared with net operating income of $403 million, or $0.82 per diluted share, in 2012.

"We made significant progress in 2013 accelerating the turnaround of Genworth," said Tom McInerney, President and CEO. "Our fourth quarter of 2013 results were strong and we are particularly pleased with the progress in improving our long term care insurance business and with the good operational performance in the Global Mortgage Insurance Division."

\*      \*      \*

**U.S. Life Insurance Division**

**Key Points**

U.S. Life Insurance Division net operating income was $119 million, compared with $111 million in the prior quarter and $73 million a year ago. Net operating income was $394 million in 2013, compared with $334 million in 2012.

Compared to the prior quarter, sales of life insurance products were higher, lower in individual long term care insurance (LTC) and modestly lower in fixed annuities.

The consolidated risk-based capital (RBC) ratio is estimated to be approximately 470 percent, up from approximately 450 percent at the end of the third quarter of 2013.

Ordinary dividends of $100 million were paid to the holding company from the U.S. Life Insurance Division in the fourth quarter of 2013, including $25 million from Brookfield Life and Annuity Insurance Company Limited. Ordinary dividends of $200 million were paid from the U.S. Life Insurance Division to the holding company as of December 31, 2013.

As of December 31, 2013, LTC in force premium rate increase approvals represented approximately $195 to $200 million of the expected $250 to $300 million premium increase when fully implemented.

**Life Insurance**

Life insurance net operating income was $56 million, compared with $54 million in the prior quarter and $46 million in the prior year. Results in the quarter included $8 million of favorable items, including a favorable impact from prepayment speed adjustments on structured securities and a favorable impact from a refinement to the calculation of incurred but not reported reserves. Results in the quarter also included favorable taxes of $6 million from a state tax adjustment. Current quarter mortality experience was favorable versus pricing expectations and in line with the prior quarter but unfavorable versus the prior year because of higher claim severity. Prior quarter results included a net benefit of $17 million from favorable unlocking and other adjustments.

Sales increased modestly versus the prior quarter and were down $14 million versus the prior year when the company discontinued sales of its term universal life insurance product because of regulatory changes and began to transition to new term and universal life insurance product offerings. The company is continuing to make pricing and product changes that are expected to increase sales over time.

**Long Term Care Insurance**

Long term care insurance net operating income was $42 million, compared with $41 million in the prior quarter and $7 million in the prior year. Results benefitted

from premium increases and reduced benefits of $8 million versus the prior quarter and $34 million versus the prior year related to the premium increases approved and implemented to date. Current quarter results included a $7 million unfavorable reserve adjustment and $7 million of favorable taxes primarily from a deferred tax liability correction. Results also included unfavorable claims experience versus the prior quarter from lower cancellations of pending claims. Prior year results included a $5 million unfavorable refinement to reserves to more fully reflect the low interest rate environment. The reported loss ratio for the current quarter was approximately 68 percent, four points higher than the prior quarter and five points lower than the prior year.

Individual LTC sales of $24 million were lower than the prior quarter. Sales are expected to continue at these levels in the near term due to the cessation of sales of AARP branded products in the retail channel and the introduction of higher priced products in additional states. The company is investing in distribution and marketing to increase LTC sales over time and also announced in the fourth quarter that it has started to file for regulatory approval of its Privileged Choice Flex 3.0 product. The company expects to launch the new product by the end of the first half of 2014.

As previously announced in the third quarter of 2012, the company filed for LTC in force premium rate increases with the goal of achieving approximately $250 to $300 million of additional annual premiums when fully implemented by 2017. As of December 31, 2013, the company has received approvals from 41 states representing approximately $195 to $200 million of the expected premium increase.

(Footnotes omitted).

19.     On March 3, 2014, Genworth filed its Annual Report with the SEC on Form 10-K for the 2013 fiscal year.  The Company's Form 10-K was signed by Defendants McInerney and Klein and reaffirmed the Company's financial results previously announced on February 4, 2014.

20.     On April 29, 2014, the Company issued a press release entitled, "Genworth Financial Announces First Quarter 2014 Results."  Therein, the Company, in relevant part, stated:

**Net Income Improves 79 Percent From Prior Year**
**Sequentially Higher Mortality In U.S. Life Insurance Division**
**Strong Loss Performance In Global Mortgage Insurance Division**

Genworth Financial, Inc. (NYSE: GNW) today reported results for the first quarter of 2014. The company reported net income[1] of $184 million, or $0.37 per diluted share, compared with net income of $103 million, or $0.21 per diluted share, in the first quarter of 2013. Net operating income[2] for the first quarter of 2014 was $194 million, or $0.39 per diluted share, compared with net operating income of $151 million, or $0.30 per diluted share, in the first quarter of 2013.

"Genworth's first quarter 2014 results reflect continued progress in our turnaround strategy," said Tom McInerney, President and CEO. "Our mortgage insurance businesses benefitted from improved loss ratios, and long term care premium increases continued to positively impact earnings in our U.S. Life Insurance Division."

*       *       *

**U.S. Life Insurance Division**

**Key Points**

- U.S. Life Insurance Division net operating income was $94 million, compared with $119 million in the prior quarter and $85 million a year ago.

- Compared to the prior quarter, sales of life insurance products were higher, lower in individual long term care insurance (LTC) and lower in fixed annuities.

- The consolidated risk-based capital (RBC) ratio is estimated to be approximately 480 percent3, compared to 487 percent at the end of the fourth quarter of 2013.

- As of March 31, 2014, the number of states approved as part of the 2012 in force premium rate increases remained at 41. The company expects to achieve $250 to $300 million of premium increases when fully implemented.

- In September 2013, the company announced that it began filing for LTC premium rate increases on certain Privileged Choice® and Classic Select® policies sold between 2003 and 2012. As of March 31, 2014, 11 states have approved these rate increases.

**Life Insurance**

Life insurance net operating income was $21 million, compared with $56 million in the prior quarter and $36 million in the prior year. Results in the current quarter reflected unfavorable mortality experience from higher frequency of claims in both term and universal life insurance versus the prior quarter and from both

higher frequency in term life insurance and higher severity of claims in universal life insurance versus the prior year. Higher mortality drove an increase in claims paid and a reduction in product fees partially offset by reduced amortization. Results in the prior quarter included $14 million of favorable items.

Sales increased versus the prior quarter and prior year from increased sales of term life insurance. The company is transitioning to a broader set of competitive product offerings and sales are expected to increase in 2014 from current levels.

**Long Term Care Insurance**

Long term care insurance net operating income was $46 million, compared with $42 million in the prior quarter and $20 million in the prior year. Results benefitted from premium increases and reduced benefits of $10 million versus the prior quarter and $40 million versus the prior year related to the premium increases approved and implemented to date. Current quarter results included a $5 million favorable correction to investment amortization for preferred stock that was more than offset by lower variable investment income versus the prior quarter. Results versus the prior year included less favorable claim terminations related to mortality and higher reserves related to certain policies with survivorship benefits. The reported loss ratio for the current quarter was approximately 63 percent, five points lower than the prior quarter and three points lower than the prior year.

Individual LTC sales of $21 million were $3 million lower than the prior quarter. The company is continuing to invest in distribution and marketing to increase LTC sales over time and expects to begin seeing some impact from these actions during the second half of the year. In the fourth quarter of 2013, the company announced that it has started to file for regulatory approval of its Privileged Choice Flex 3.0 product and expects to launch this product in July 2014.

21.     On April 30, 2014, Genworth filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal first quarter.  The Company's Form 10-Q reaffirmed the Company's financial results previously announced on April 29, 2014.

22.     The statements contained in ¶¶ 17-21 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's LTC insurance claims were increasing in number and size; (2) that the Company would have to increase its reserves to meet these claims; and (3) that, as a result of the foregoing,

the Company's statements about its business, operations, and prospects, were materially false

and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

23.     On July 29, 2014, after the market closed, the Company issued a press release

entitled, "Genworth Financial Announces Second Quarter 2014 Results."     Therein, the

Company, in relevant part, stated:

> **Strong Loss Performance In Global Mortgage Insurance Division**
> **Adverse Long Term Care Insurance Claims Experience**
> **$514 Million Net Proceeds From Australia Mortgage Insurance IPO**
>
> Genworth Financial, Inc. (NYSE: GNW) today reported results for the second
> quarter of 2014. The company reported net income of $176 million, or $0.35 per
> diluted share, compared with net income of $141 million, or $0.28 per diluted
> share, in the second quarter of 2013. Net operating income[2] for the second quarter
> of 2014 was $158 million, or $0.31 per diluted share, compared with net operating
> income of $133 million, or $0.27 per diluted share, in the second quarter of 2013.
> On May 21, 2014, the company completed the minority initial public offering
> (IPO) of 33.8 percent of its Australia mortgage insurance (MI) business and as a
> result net income attributable to noncontrolling interests in the Australia MI
> business was $11 million in the current quarter. Net income before net income
> attributable to noncontrolling interests in the Australia MI business was $187
> million, or $0.37 per diluted share, in the second quarter of 2014 compared with
> net income available to Genworth's common stockholders of $141 million, or
> $0.28 per diluted share, in the second quarter of 2013. Net operating income
> before net operating income attributable to noncontrolling interests in the
> Australia MI business for the second quarter of 2014 was $169 million, or $0.34
> per diluted share, compared with net operating income of $133 million, or $0.27
> per diluted share, in the second quarter of 2013.
>
> "Genworth made continued progress in our turnaround strategy during the quarter
> with the completion of the partial IPO of our Australia MI business," said Tom
> McInerney, President and CEO. "Our second quarter 2014 results were strong in
> our mortgage insurance businesses, which benefitted from continued solid loss
> performance, but disappointing in our long term care insurance business, where
> we experienced adverse claims development. We continue to pursue state
> approvals for premium rate increases in long term care and recently launched a
> new long term care insurance product in 42 states that balances flexibility for
> customers with appropriate risk-adjusted returns for Genworth."
>
>                    *        *        *

**U.S. Life Insurance Division**

**Key Points**

U.S. Life Insurance Division net operating income was $69 million, compared with $94 million in the prior quarter and $79 million a year ago.

Compared to the prior quarter, sales of life insurance and individual long term care insurance (LTC) products were higher but lower in fixed annuities.

The consolidated risk-based capital (RBC) ratio is estimated to be approximately 490 percent, up from 480 percent at the end of the first quarter of 2014.

Company estimate for the second quarter of 2014, due to timing of the filing of statutory statements.

As of June 30, 2014, 43 states have approved premium rate increases as part of the 2012 in force premium rate increases. The company continues to expect to achieve $250 to $300 million of premium increases when fully implemented.

In September 2013, the company announced that it began filing for LTC premium rate increases on certain Privileged Choice® and Classic Select® policies sold between 2003 and 2012. As of June 30, 2014, 18 states have approved these rate increases.

**<u>Life Insurance</u>**

Life insurance net operating income was $39 million, compared with $21 million in the prior quarter and $27 million in the prior year. Mortality experience improved versus the prior quarter. Results compared to the prior year benefitted from slower reserve growth resulting from a correction to reserves and unlocking of mortality and interest assumptions which were completed in the third quarter of 2013. In addition, investment spread and mortality improved modestly versus the prior year.

Sales of $26 million increased versus the prior quarter and prior year. The company is transitioning to a broader set of competitive permanent product offerings, including indexed universal life and linked benefit products, and growth in sales on these products is expected to continue through the remainder of 2014. Linked benefit product deposits were $42 million in the quarter, up from $25 million in the prior quarter and in the prior year.

**Long Term Care Insurance**

Long term care insurance net operating income was $6 million, compared with $46 million in the prior quarter and $26 million in the prior year. Results benefitted from premium increases and reduced benefits of $3 million versus the prior quarter and $34 million versus the prior year related to the premium increases approved and implemented to date. Benefits and other changes in policy reserves increased $46 million after-tax versus the prior quarter and $47 million after-tax versus the prior year. Excluding the impact from the premium increases approved and implemented to date, benefits and other changes in policy reserves increased $45 million after-tax versus the prior quarter primarily from higher incurred losses resulting from higher severity on new and existing claims and increased $66 million after-tax versus the prior year primarily from higher severity and frequency on new and existing claims. As a result of recent experience, and in connection with its regular review of claims reserve assumptions for its long term care insurance products, the company is conducting a comprehensive review of the adequacy of its claim reserves. The company intends to complete this review before the release of financial results for the third quarter of 2014. The company continues to believe that the existing assumptions and methodology provide the most reliable best estimate. However, given the review underway, that will consider both long-term and recent experience, the company will likely change some of its assumptions, which could increase its long term care insurance claim reserves, and any increase may or may not be material.

Individual LTC sales of $24 million were higher than the prior quarter and lower than the prior year. The company is continuing to invest in distribution and marketing to increase LTC sales over time and expects to begin seeing some impact from these actions during the second half of the year. The company launched its Privileged Choice Flex 3.0 product in July 2014 in 42 states which gives millions more Americans the flexibility to choose the right fit for their long term care needs, combined with the simplicity of prepackaged benefits.

(Footnotes omitted).

24.     On this news, shares of Genworth declined $2.28 per share, over 14%, to close on July 30, 2014 at $13.98 per share, on unusually heavy volume

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Genworth's securities between December 4, 2013 and July 29, 2014, inclusive (the "Class

Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Genworth's securities were actively traded on the New York Stock Exchange (the "NYSE").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Genworth shares were traded publicly during the Class Period on the NYSE.  As of July 24, 2014, Genworth had 496,616,897 shares of Class A common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Genworth or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Genworth; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Genworth's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Genworth's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Genworth's securities relying upon the integrity of the market price of the Company's securities and market information relating to Genworth, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Genworth's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements,

as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Genworth's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Genworth's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

<u>**LOSS CAUSATION**</u>

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Genworth's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Genworth, his/her control over, and/or receipt and/or modification of Genworth's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Genworth, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Genworth's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Genworth's securities traded at artificially inflated prices during the Class Period. On May 12, 2014, the Company's stock closed at a Class Period high of $18.60 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Genworth's securities and market information relating to Genworth, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Genworth's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about Genworth's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Genworth and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45. At all relevant times, the market for Genworth's securities was an efficient market for the following reasons, among others:

(a) Genworth stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Genworth filed periodic public reports with the SEC and/or the NYSE;

(c) Genworth regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Genworth was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Genworth's securities promptly digested current information regarding Genworth from all publicly available sources and reflected such information in Genworth's stock price. Under these circumstances, all purchasers of Genworth's securities during the Class Period suffered similar injury through their purchase of Genworth's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Genworth who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Genworth's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Genworth's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Genworth's financial well-being and prospects, as specified herein.

52.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Genworth's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Genworth and its business

operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Genworth's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations,

financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Genworth's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Genworth's securities during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Genworth was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Genworth securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Genworth within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Genworth and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  August 19, 2014                **KIRBY MCINERNEY LLP**

                                        By: _____
                                        Ira M. Press
                                        825 Third Avenue, 16th Floor
                                        New York, NY  10022
                                        Telephone: (212) 371-6600
                                        Facsimile: (212) 751-2540

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

Genworth Financial, Inc., **SECURITIES LITIGATION**

I, Manuel Esguerra, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Genworth Financial, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Genworth Financial, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ___ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 8-11-14

_____
(Please Sign Your Name Above)

| Manuel Esguerra's Transactions in Genworth Financial Inc (GNW) | | | |
|---|---|---|---|
| Transaction Type | Date | Shares | Price |
| BUY | 6/30/2014 | 100 | $17.3699 |
| SOLD | 7/1/2014 | -100 | $17.7430 |
| BUY | 7/8/2014 | 100 | $17.1200 |